UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
HAMED ABOUSHANAB and BAHIGA MOHAMED, :
husband and wife, TONINO SPINUCCI, SOHEIR   : **OPINION AND ORDER**
RAMADAN, SAMIR M. EL-GAZZAR and AFAF A.     : **GRANTING IN PART AND**
SHALABY, husband and wife, VICENTE HOLANDAY, : **DENYING IN PART**
GERALD S. ROYAL and MARY E. ROYAL, husband  : **DEFENDANTS' MOTION**
and wife,                                    : **TO DISMISS**
                                             :
                              Plaintiffs,    : 06 Civ. 13472 (AKH)
        -against-                            :
                                             :
GAD JANAY, MARLENE JANAY, RESQNET.COM,       :
INC., TRADEPAQ, INC., CSI COMPLEX SYSTEMS,   :
INC., JOHN AND JANE DOES 1-10 and XYZ        :
CORPORATIONS 1-10,                           :
                                             :
                              Defendants.    :
------------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiffs' Second Amended Complaint ("SAC") alleges breach of contract and fraud claims arising out of Defendants' transfer of substantially all assets from ResQNet.com, Inc. ("ResQNet"), a company in which Plaintiffs had invested, to Tradepaq, Inc. ("Tradepaq") and CSI Complex Systems, Inc. ("CSI"), companies in which Plaintiffs had no interest. Defendants moved to dismiss the complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiffs have not pleaded their allegations of fraud with requisite specificity, and that in any event, all of Plaintiffs' allegations are barred by the applicable statute of limitations. For the reasons stated below, Defendants' motion is granted in part and denied in part.

I.  **Background**

    A.  <u>The Sale of Series A Preferred Stock and Subsequent ResQNet Agreements</u>

Defendant Gad Janay ("Janay") is the Chief Executive Officer of ResQNet, Tradepaq, and CSI. Together with his wife, defendant Marlene Janay, Janay owns a majority of the common stock of ResQNet. SAC ¶ 20. Janay owns 90% of Tradepaq and 100% of CSI. SAC ¶¶ 20–21. ResQNet develops computer software; Tradepaq and CSI license computer software. SAC ¶¶ 28–30.

During the fall of 1999, ResQNet distributed an Offering Memorandum offering for sale "Series A Preferred Stock." SAC ¶ 36. As set forth in the Offering Memorandum, Plaintiffs purchased "Series A Preferred Stock" pursuant to a Certificate of Designation. SAC ¶ 38. Section 6(f) of the Certificate of Designation provides in part:

> [If ResQNet] sells, transfers, exchanges, or otherwise disposes of all or substantially all of its property, assets, or business … then each holder of the Series A Preferred Stock shall be given a written notice … and each holder … shall have the right thereafter to receive, upon conversion of the Series A Preferred Stock … the number of shares of stock or other securities, property or assets of [ResQNet] … or cash receivable as a result of such … sale, transfer, exchange or disposition by a holder …

SAC ¶ 39. Plaintiffs allege that the Certificate of Designation is a contract between ResQNet and each of them. <u>See</u> SAC ¶¶ 95–103.

Soon after the sale of Series A Preferred Stock, Janay began stripping ResQNet of its business by transferring ResQNet's business and clients to Tradepaq and CSI. SAC ¶ 43. On November 17, 1999, ResQNet entered into a Licensing Representation Agreement with Tradepaq. SAC ¶ 45. The Tradepaq Agreement gave Tradepaq the best available terms for licensing ResQNet software regardless of volume of business. SAC ¶ 48. On December 2, 1999, ResQNet entered into a Licensing Representation Agreement with CSI. SAC ¶ 46. The

CSI Agreement gave CSI a flat 50 percent discount on ResQNet software products.  ResQNet also performed custom enhancements to meet CSI requirements at no cost to CSI.  In some instances, paying customers waited for modifications to their software while ResQNet engineers performed free modifications for CSI.  SAC ¶ 55.

ResQNet, CSI, and Tradepaq engaged in inter-company transactions and allocations of resources.  CSI leased the eighth and ninth floors at 33 Maiden Lane in Manhattan.  ResQNet subleased the eighth floor from CSI, and Tradepaq subleased a portion of that space of ResQNet.  SAC ¶ 60.  The entities shared a single accounting department, a common receptionist, office manager, and conference rooms.  Id.  Janay allocated expenses such as insurance among the three companies, and directed that interest-free loans be made among the three companies.  SAC ¶¶ 61–62.

On October 28, 2002, Janay met with minority shareholders.  He did not mention the agreements or transactions as between ResQNet and Tradepaq and CSI.  SAC ¶ 70.  Janay assured shareholders that ResQNet would receive 70 percent of his time; that deals with various local governments might be realized; and that ResQNet's existing revenue streams would be sufficient to pay back the minority shareholders' investment.  Id.  Janay met with the ResQNet Board of Directors on December 5, 2002.  He did not disclose that he planned to transfer all of ResQNet's assets, and instead represented that he would consider the options the Board proposed to improve ResQNet's financial condition.  SAC ¶ 77.

B.  The January 2003 Events

In January 2003, Janay terminated 34 of ResQNet's employees, rehiring 21 of them at CSI or Tradepaq.  SAC ¶ 79.  CSI and Tradepaq did not give ResQNet any form of consideration for the transfer of employees.  SAC ¶ 80.  Janay then transferred "the vast

majority" of ResQNet's customer contacts to Tradepaq through the execution of an Assumption and License Agreement dated January 31, 2003. SAC ¶ 82. The Assumption Agreement transferred all of ResQNet's customer contacts to Tradepaq except for its contacts with IBM and a company called Zephyr, SAC ¶ 82, and pursuant to the Agreement, Tradepaq assumed the revenue streams from ResQNet customers, and ResQNet's duties to service those customers. SAC ¶ 83. Thus in 2004, Tradepaq received $673,205.57 in fees from former ResQNet customers, and paid only $78,328.79 of that amount to ResQNet. SAC ¶ 86.

At a meeting with the Board of Directors on January 31, 2003, Janay confirmed that he had terminated all of ResQNet's employees and transferred many of them to Tradepaq and CSI. SAC ¶ 88. Janay also confirmed that he transferred customer contacts to Tradepaq, and by letter to the ResQNet board dated February 27, 2003, accepted responsibility for the transfers. SAC ¶ 89.

C. Consequent Litigation

On March 31, 2006, Justice Richard B. Lowe, III, filed a 24-page "Decision After Trial" in the matter of Harris Venture Partners, L.P. v. Gad Janay, No. 603560/03 (N.Y. Sup. Ct. 2006). See SAC ¶ 91; Ex. to First Amended Complaint (document no. 2). Justice Lowe held defendants Gad Janay, Marlene Janay, Charles Griffis, and ResQNet liable for breach of fiduciary duty in the amount of $1.7 million plus interest, and for breach of contract in the amount of $850,000 plus interest, on facts substantially similar to those recited above. Plaintiffs allege that Justice Lowe's written decision served as the first notice they had of Defendants' conduct. SAC ¶ 91. The parties settled after trial, and on August 18, 2006, Justice Lowe vacated his decision. See Def. Reply at 8 n.6.

On November 23, 2006, Plaintiffs filed a complaint in this Court against defendants Gad Janay, Marlene Janay, ResQNet, Tradepaq, and CSI, alleging claims for breach of contract, breach of fiduciary duty, fraud, and other claims. An amended complaint followed on December 18, 2006, and on March 6, 2007, Defendants moved to dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. On April 24, 2007, the parties appeared for oral argument on Defendants' motion to dismiss. I granted the motion, dismissing counts two, eight, and ten with prejudice, and dismissing the remaining counts with leave to replead. See Summary Order, April 28, 2007.

On May 29, 2007, Plaintiffs filed their Second Amended Complaint, which alleges two causes of action: breach of contract against Gad Janay, Marlene Janay, and ResQNet, and fraud against Gad Janay, Marlene Janay, ResQNet, Tradepaq, and CSI. Defendants moved to dismiss the Second Amended Complaint, renewing their arguments that the fraud count fails to comply with Rules 9(b) and 12(b)(6), Fed. R. Civ. P., and that in any event, all counts are barred by the applicable statute of limitations and should be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P. For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part.

## Discussion

**I.   Choice of Law**

   A. Federal Choice of Law Principles

Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations. Stuart v. American Cyanamid Co., 158 F.3d 622, 626 (2d Cir. 1998) (citing Guaranty Trust Co. v. York, 326 U.S. 99, 108–09 (1945); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).

B. <u>New York Statute of Limitations</u>

New York's statute of limitations, in appropriate instances, will apply, or "borrow," the statute of a different state or nation. Under N.Y. C.P.L.R. § 202,[1] in a case filed by a non-resident plaintiff, the shorter statute of limitations period, and all applicable tolling provisions, provided by either New York or the state where the cause of action accrued, will be applied. <u>Cantor Fitzgerald v. Lutnick</u>, 313 F.3d 704, 710 (2d Cir. 2002). Where, as here, the "injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." <u>Id.</u> (quoting <u>Global Fin. Corp. v. Triarc Corp.</u>, 93 N.Y.2d 525 (N.Y. 1999)).

New York's borrowing statute "is in the nature of an exception to the normal New York conflicts rule of applying the law of the jurisdiction with the most significant contacts." <u>Bianco v. Erkins (In re Gaston & Snow)</u>, 243 F.3d 599, 608 (2d Cir. 2001). Thus "[m]odern choice-of-law decisions are … inapplicable to the question of statutory construction presented by CPLR 202." <u>Id.</u> (quoting <u>Ledwith v. Sears Roebuck & Co.</u>, 231 A.D.2d 17, 24 (N.Y. App. Div. 1997); <u>see also</u> <u>Global Fin. Corp. v. Triarc Corp.</u>, 93 N.Y.2d at 528 ("[T]here is a significant difference between a choice-of-law question, which is a matter of common law, and this Statute of Limitations issue, which is governed by particular terms of the CPLR"). Accordingly, New York applies its own law to decide where, for statute of limitations purposes, the cause of action accrued, and whether plaintiff was a resident of New York. <u>See e.g.</u>, <u>Global Fin. Corp. v. Triarc Corp.</u>, <u>supra</u> (applying New York claims accrual law); <u>Ledwith v. Sears Roebuck & Co.</u>, <u>supra</u> (applying New York residency law).

---

[1] N.Y. C.P.L.R. § 202 provides: An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

In this case, the question where the cause of action accrued turns on whether Plaintiffs' claim is derivative or direct. If the claim is derivative, it accrues to the corporation, that is, to ResQNet, in the state in which the corporation resides. See Brinckerhoff v. JAC Holding Corp., 263 A.D.2d 352, 353 (N.Y. App. Div. 1999) (holding that under N.Y. C.P.L.R. § 202, plaintiffs' derivative claims accrued in "Georgia, since that is where [the corporation] had its principal office and where [the corporation's] alleged monetary damages would be felt"). If the claim is direct, it accrues to each individual plaintiff in the state in which he or she resides.

C. Law of Plaintiffs' Breach of Contract Claim

Although New York law provides the rule of decision as to which state's statute of limitations is applicable, Delaware law governs the merits of Plaintiffs' breach of contract claim against ResQNet, for Delaware law regulates the internal affairs between a corporation, incorporated in Delaware, and the holders of securities of that corporation. Plaintiffs allege that "the rights of ResQNet preferred shareholders are set forth in ResQNet's Certificate of Designations," SAC ¶ 96, pursuant to 8 Del. C. § 151. "Section 151 … outlines the general corporate power to issue stock and dividends …." Waggoner v. Laster, 581 A.2d 1127, 1133 (Del. 1990), and provides that the "certificate of designation … when effective (8 Del. C. § 103), amends and becomes a part of the certificate of incorporation (8 Del. C. § 151(g))." Warner Communications, Inc. v. Chris-Craft Industries, Inc., 583 A.2d 962, 968 (Del. Ch. 1989). Because the Certificate of Designations creates rights and liabilities as between shareholders and the corporation, and because it becomes part of the corporation's governing charter, both as a matter of Delaware law and New York's "internal affairs" doctrine,[2] the law of Delaware

---

[2] The internal affairs doctrine is a conflict of laws principle according to which only one state should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands. Edgar v. MITE Corp., 457 U.S. 624, 645 (1982); Restatement 2d Conflict of Laws § 309.

applies. See Restatement 2d of Conflict of Laws, § 302(2) & comment e. ("Uniform treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law."); Lacos Land Co. v. Lone Star Indus., 141 B.R. 815, 822 (Bankr. S.D.N.Y. 1992) (holding that dispute involving certificate of incorporation should be resolved according to law of the state that issued the certificate).

## II.  Analysis

### A.  Count One:  Plaintiffs' Breach of Contract Claim

#### i.  Individual Defendants as Parties to the Certificate of Designation

Plaintiffs' breach of contract claim against individual defendants Gad Janay and Marlene Janay does not allege any facts that would permit the finder of fact to conclude that the Janays entered into a contract directly with Plaintiffs, separately and apart from agreements between Plaintiffs and ResQNet, the corporation, of which they all were stockholders. Plaintiffs do not dispute this point, but argue that the individual defendants should be held liable for ResQNet's breach because ResQNet is an alter ego of the Janays. See Opp. Mem. at 28.

To sustain an alter-ego theory, the plaintiff must allege facts showing that "the corporation [is] a sham and exist[s] for no other purpose than as a vehicle for fraud." Wallace v. Wood, 752 A.2d 1175, 1184 (Del. Ch. 1999). Plaintiffs have alleged no such facts. Indeed, they have shown that ResQNet held board meetings attended by directors, including outside directors, employed several dozen individuals, and kept corporate records. See Mason v. Network of

---

New York recognizes the doctrine and usually, but not automatically, applies the law of the incorporating state to matters concerning the internal affairs of the corporation. See Greenspun v. Lindley, 36 N.Y.2d 473 (1975); Hart v. General Motors Corp., 129 A.D.2d 179 (N.Y. App. Div. 1987); In re Topps Co. Inc., No. 600715/07, 2007 N.Y. Misc. LEXIS 4463 (N.Y. Sup. Ct. 2007); Sokol v. Ventures Educ. Sys. Corp., 809 N.Y.S.2d 484 (N.Y. Sup. Ct. 2005); Seybold v. Groenink, No. 06 Civ. 772, 2007 U.S. Dist. LEXIS 16994 (S.D.N.Y. 2007). The internal affairs doctrine is not, however, "an exception to traditional statute of limitations principles." Beana v. Woori Bank, No. 05 Civ. 7018, 2006 U.S. Dist. LEXIS 74549 (S.D.N.Y. 2006).

Wilmington, Inc., 2005 Del. Ch. LEXIS 99 (Del. Ch. 2005) (citing United States v. Golden Acres, Inc., 702 F. Supp. 1097, 1104 (D. Del. 1988)).  Plaintiffs' alter-ego theory is not a viable claim, and their breach of contract claim against Gad Janay and Marlene Janay is dismissed with prejudice.

>    ii.  Statute of Limitations under N.Y. C.P.L.R. § 202

All plaintiffs are non-residents of New York.  Thus the applicable statute of limitations for each plaintiff's claim against ResQNet is the shorter of that provided by New York, or the state of the plaintiff's residence.  See Cantor Fitzgerald, 313 F.3d at 710 (under N.Y. C.P.L.R. § 202, purely economic injury accrues in state where plaintiff resides).

In New York, "an action upon a contractual obligation or liability" "must be commenced within six years."  N.Y. C.P.L.R. § 213.  The cause of action arises and accrues from the act of breach, not from notice or knowledge of the breach.  See e.g., Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399, 403 (N.Y. 1993).  Plaintiffs' complaint, filed November 23, 2006, would be timely under New York law for all acts or events occurring on or after November 23, 2000.

Defendants argue that for two plaintiffs, Hamed Aboushanab and Bahiga Mohamed, who reside in Egypt, the applicable statute of limitations is one to three years, and cite to statutes of Egypt, and decisions of this District citing those statutes.  See Def. Mem. at 11–12 n.14 (citing Egyptian Civil Code, Law No. 131, art. 698; Younis v. American Univ. in Cairo, 30 F. Supp. 2d 390, 393 (S.D.N.Y. 1998) (dismissing complaint on ground of forum non conveniens); Zanfardino v. E-Systems, Inc., 652 F. Supp. 637, 639 (S.D.N.Y. 1987) (stating that Egypt has one-year statute of limitations for breach of employment contract claims).  The cases Defendants cite are distinguishable from the case at bar, and Defendants have failed to provide

the Court with an English-language translation of the relevant portion of the Egyptian Civil Code, or other proofs.  Defendants have not sustained their affirmative defense that Plaintiffs' breach of contract claims are time-barred, and their motion to dismiss Aboushanab's and Mohamed's claims on that ground is denied.

        Similarly, Defendants have not argued that the law of the other states in which Plaintiffs reside—Arizona, Georgia, Florida, Illinois, New Jersey, and Washington—provide for a shorter period of limitations than New York.  Thus they have not established their affirmative defense that claims accruing to plaintiffs who live in these states are time-barred.  See Hunt v. Enzo Biochem, Inc., 471 F. Supp. 2d 390, 399 (S.D.N.Y. 2006) ("When a defendant attempts to use the statute of limitations as an affirmative defense, the defendant 'bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued'") (quoting Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995)); see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., No. 93 Civ. 6876, 2001 U.S. Dist. LEXIS 5880 (S.D.N.Y. 2001) ("[U]nder New York law, the parties' failure to plead and prove applicable foreign law permits the court to proceed on the assumption that the law of the foreign jurisdiction accords with that of New York on the subject.").  Defendants' motion to dismiss the breach of contract claim alleged by plaintiffs other than Aboushanab and Mohamed is denied.

  B.  Count Two:  Plaintiffs' Fraud Claim

        Plaintiffs' allegations of fraud must be dismissed for at least two reasons:  for failure to state a claim pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and for lack of standing—that is, failure to bring the claim derivatively.[3]

---

[3] In addition to these three grounds, Defendants argue that Plaintiffs' fraud claim should be dismissed for failure to plead individual injury, as duplicative of the breach of contract claim, and as time-barred under Delaware law.

      i.   Application of Rules 9(b) and 12(b)(6)

Under Rule 9(b) of the Federal Rules of Civil Procedure, an allegation of fraud must "be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) is special pleading requirement governing all civil actions, including all suits in which subject matter jurisdiction is based on diversity of citizenship and the law of the state in which the district court sits will control the content of the elements of a fraud claim. Malmsteen v. Berdon, LLP, 477 F. Supp. 2d 655, 664 (S.D.N.Y. 2007) (omitting quotations, brackets, and ellipses). Allegations of fraud "must specify (1) those statements the plaintiff thinks were fraudulent, (2) the speaker, (3) where and when they were made, and (4) why plaintiff believes the statements fraudulent." Koehler v. Bank of Berm. (N.Y.) Ltd., 209 F.3d 130, 136 (2d Cir. 2000).

The complaint alleges that defendants Gad Janay, Marlene Janay, ResQNet, Tradepaq, and CSI are liable to Plaintiffs for fraud. But Plaintiffs have alleged no facts showing that any defendant other than Gad Janay made statements, or that Plaintiffs relied upon any statement—save those made by Janay. The complaint alleges only that Gad Janay made misrepresentations at a shareholder meeting on October 28, 2002—it does not mention other defendants in connection with that meeting, or any other meeting. Indeed, the complaint states that the "October 2002 Meeting was the last time the shareholders heard from Janay or the Company." SAC ¶ 73. The fraud claim must be dismissed as against every defendant except Gad Janay for failure to identify statements made by such defendants that the plaintiff thinks were fraudulent.

      ii.   Direct or Derivative Claim

For the purposes of determining whether Plaintiffs have standing to bring a direct, rather than an indirect, or derivative, claim against Defendants for fraud, the law of the state of

incorporation applies.  Cf. Everett v. Bozic, No. 05 Civ. 296, 2006 WL 2291083 (S.D.N.Y. 2006) (citing Kamen v. Kemper Fin. Servs., 500 U.S. 90, 108–09 (1991)).  Plaintiffs' claim sounding in fraud alleges injury directly to the corporation, ResQNet, and only indirectly to the plaintiffs as shareholders of ResQNet.  See e.g., SAC ¶ 107 (alleging that Janay caused ResQNet to enter into an agreement that was "brutally detrimental to ResQNet's business"); SAC ¶ 120 (Plaintiffs have suffered and continue to suffer special injury as a result of this fraud because ResQNet, the company that they had invested in and hold preferred and common share in, has been drained of its assets and is no longer worth anything as an operating entity.").  Plaintiffs' injury, as shareholders, is indirect—Plaintiffs have not "demonstrated that [they] can prevail without showing an injury to the corporation[.]"  Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031, 1036 (Del. 2004).  Because Plaintiffs have failed to allege their claims of fraud derivatively, in the name of the corporation, Count Two of the complaint is dismissed against all defendants.

    iii. Equitable "Unjust Enrichment" Exception to Derivative Claim Requirements

    Plaintiffs argue that even if their fraud claims are derivative in nature, they should be allowed to bring them directly because a derivative recovery would primarily benefit the Janays, as controlling shareholders.  See Opp. Mem. at 32 (citing In re Gaylord Container Corp. Shareholders Litig., 747 A.2d 71 (Del. Ch. 1999); Fischer v. Fischer, 1999 WL 1032768 (Del. Ch. 1999).  In Agostino v. Hicks, Chancellor Chandler commented that Fischer, Gaylord, and like cases created a limited "unjust enrichment exception" to the general rule that a plaintiff alleging injury to the corporation must bring his claim derivatively, in accordance with Delaware's demand and notice procedures.  See 845 A.2d 1110, 1125 (Del. Ch. 2004) (quoting Kurt M. Heyman & Patricia L. Enerio, The Disappearing Distinction Between Derivative and

Direct Actions, 4 DEL L. REV. 155, 181 (2001)).  The Court of Chancery registered its disagreement, however, with the proposition that Plaintiffs advance here—namely, "that exclusion of culpable parties in the class due relief may affect the distinction between derivative and direct claims."  Id. at 1126 n.84.  Instead, the court stated that "[t]he identity of the culpable parties does not speak to whether the conduct of those parties injured the corporation, rather than its shareholders."  Id.

It is not clear whether the "unjust enrichment" exception that Chancellor Chandler described, then found inapplicable to the case before the Court of Chancery, survives Tooley, in which the Delaware Supreme Court emphasized that the issue whether a stockholder's claim is derivative or direct "turn[s] solely" on the criteria it set out.  Tooley, 845 A.2d at 1033 (emphasis in original).  Tooley did not discuss whether an exception to its "sole" criteria might exist where a plaintiff alleges that the corporate recovery would benefit and unjustly enrich wrongdoing directors.  But the Delaware Supreme Court approved of Chancellor Chandler's decision in Agostino, agreeing that "the focus should be on the person or entity to whom the relevant duty is owed."  Id. at 1036 n.9 (citing Agostino, supra).  In light of these developments, a detailed examination of Plaintiffs' claimed "unjust enrichment" exception to the rules of derivative lawsuits is not required.  I note that, in contrast with the corporation in Fischer, ResQNet continues to operate and earn revenue and that, in contrast with the shareholders in Gaylord, Plaintiffs in this case have not alleged a diminution in voting power.  Plaintiffs have not stated a direct claim for fraud, and their allegation of fraud must be dismissed.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure is

-14-

GRANTED in part and DENIED in part. Defendants' motion to dismiss Count One, alleging breach of contract, is GRANTED as to defendants Gad Janay and Marlene Janay, and DENIED as to defendant ResQNet. Defendants' motion to dismiss Count Two, alleging fraud, is GRANTED.

The parties shall appear for a status conference on October 12, 2007 at 9:30am.

SO ORDERED.

Dated:   September **25**, 2007
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge